[No. 8593.  Department Two.  February 3, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN E. PRAUL, *Appellant*.[1]

MINES AND MINERALS —"VEINS"— DISCOVERY — EVIDENCE — SUFFICIENCY. There is sufficient evidence of the discovery of a vein of ore (understood by miners to be a body of mineral-bearing substance bounded on each side by the country rock, of varying width and length) where a miner testified that the deposit of ore was what he called a moraine ledge, and explained that the ledge was in permanent place but had been moved or shoved down with the whole country; since there appeared to be a well-defined ledge kept in place by country rock, even if the whole mountain had been moved to one side by some force of nature.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered November 22, 1909, upon a trial and conviction for trespass on unenclosed lands. Affirmed.

*Lewis J. Nelson, Fred H. Peterson,* and *Philip D. Macbride,* for appellant, contended that the mineral discovered

[1]Reported in 106 Pac. 763.

was float rock.    Lake, Prospecting for Gold and Silver,
page 17; Costigan, Mining Law, page 105.    The mineral
was not within well-defined boundaries and it was not a lode
or vein.    *Burke v. McDonald*, 2 Idaho 679, 33 Pac. 49;
*Foote v. National Min. Co.*, 2 Mont. 402; *Leadville Co. v.
Fitzgerald*, Fed. Case. No. 8,158; *Tabor v. Dexler*, Fed.
Case, No. 13,723; *Consolidated Wyoming Gold Mining Co.
v. Champion Min. Co.*, 63 Fed. 540, 544; *Book v. Justice
Min. Co.*, 58 Fed. 106, 120, 121; *Waterloo Min. Co. v. Doe*,
56 Fed. 685, 689.    A lode or ledge discovery must initiate
the location.    *Wolfley v. Lebanon Min. Co.*, 4 Colo. 112;
*Burke v. McDonald, supra; Sullivan v. Leer*, 2 Colo. App.
141, 29 Pac. 817.

*Fred Kemp* and *Ludington & Kemp*, for respondent, con-
tended that there was a ledge, vein, or deposit.    *Buffalo
Zinc & Copper Co. v. Crump*, 70 Ark. 525, 69 S. W. 572,
91 Am. St. 87; *Blue Bird Min. Co. v. Largey*, 49 Fed. 289;
*Cheesman v. Shreeve*, 40 Fed. 787; *Hayes v. Lavagnino*, 17
Utah 185, 53 Pac. 1029; *Wheeler v. Smith*, 5 Wash. 704, 32
Pac. 784; *United States v. Iron Silver Min. Co.*, 128 U. S.
673.    By "rock in place" is not meant merely hard rock
or quartz.    *Stevens v. Williams*, Fed. Case, No. 13,413;
1 Morrison, Mining Reports, 566; *Jones v. Prospect Moun-
tain Tunnel Co.*, 21 Nev. 339, 31 Pac. 642.    It is sufficient
that the mineralized substance lies within any other well-de-
fined bodies.    *Grand Cent. Min. Co. v. Mammoth Min. Co.*,
29 Utah 490, 83 Pac. 648; *Cheesman v. Shreeve, supra*.    The
locator was entitled to hold, as against trespassers.    *Cedar
Canyon Cons. Min. Co. v. Yarwood*, 27 Wash. 271, 67 Pac.
749, 91 Am. St. 841; *Clipper Min. Co. v. Eli Min. & Land
Co.*, 194 U. S. 220.

Dunbar, J.—This was an action commenced in the justice
court against the appellant for trespass on unenclosed lands,
under Rem. & Bal. Code, § 2823, and taken to the superior
court on appeal by appellant.    A trial was had in the superior

court on April 21, 1909, the court sitting with a jury, and evidence was introduced for the state for the purpose of proving that the land trespassed upon was a mining location in Chelan county made by J. E. Shore and Dan Ryan, which attempted location was called the "Pride of the West." At the conclusion of the plaintiff's testimony, the defendant moved for a dismissal of the action on the ground that the testimony did not show that any valid location of the ground entered upon and occupied had been made. . This motion was overruled by the court. · Evidence was produced by the defense and, at the conclusion of the testimony, under instructions of the court, the jury returned a verdict of guilty. Judgment was entered and appeal taken.

The appellant's assignments are that the court erred in denying the motion · for dismissal, and overruling the defendant's motion for a new trial. These assignments involve the contention that the so-called Pride of the West mining claim was not shown under the testimony to be a valid mining location, and that the lode claimants, Messrs. Shore and Davis (Ryan's successors in interest), therefore had no possessory right to the land, and that, therefore, no trespass was committed by the appellant. Conceding the statement of the appellant and the authorities cited by him, to the effect that no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located; that veins are collections of mineral matter often closely related to, but differing more or less in character from, the inclosing country rock, usually in fissures formed in those rocks after the rocks had more or less consolidated; and that a vein, as the term is used in the mining law, is a body of mineral-bearing rock, within defined boundaries in the general mass of the mountain, we think there was sufficient testimony in this case to refute the appellant's contention that there was no vein or ledge within the meaning of the law, and that there was no rock in place shown.

A very clear and comprehensive definition of a vein was

given in *King v. Amy & Silversmith Con. Min. Co.*, 9 Mont. 543, 24 Pac. 200, to the effect that a vein to the miner is a body of ore, quartz, or mineral-bearing substance lying within the crust of the earth, bounded on each side by the country rock, greatly varying in width, and extending in length across and through the country for greater and less distances. It is true that one of the principal witnesses for the respondent, Mr. Dan Ryan, who was the.locator, testified that the condition of the earth at the location of this place showed what he said he would call a kind of moraine ledge. But while he called it a moraine ledge, the description that he gave of the condition showed that he did not understand the exact meaning of the word moraine, which in reality is not a legal but a geological word. He had some slight conception of the meaning of moraine, and concluded this was a moraine because the ground or mountain had been moved. But the condition that he described showed that it was actually a ledge with rock in place. After stating that it was what he called a kind of a moraine ledge, he continued by saying: "The mountain has been shoved and of course it is not in place, but the ledge is there all the same. The deposit of ore extends up to the surface, but this one has been shoved down." Further on he gave a description of the condition as follows:

"Q. What do you mean by moraine ledge? A. Well, ground that has been shoved off. There may be a thousand feet or two thousand or a hundred feet. But the ledge has been in its permanent place, only has been shoved off from the vein. I call it a broken ledge. The whole country has been moved. Q. Not just alone that ledge, but the whole country has been moved? A. Yes."

If there is a well-defined ledge there kept in place by country rock, which the witness testified it had been, it would still be a ledge with rock in place, even though the whole mountain had been shoved to one side by some force of nature; and this was the condition that was proven there,

if the jury believed the testimony of the witnesses for the state. There was a contradiction in the testimony, but with that we have no concern. The jury was properly instructed by the court, and no exceptions have been taken to the instructions. It was shown that all the other requirements had been met. The jury determined the main point in controversy, and the judgment will therefore be affirmed.

RUDKIN, C. J., CROW, PARKER, and MOUNT, JJ., concur.